IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BLANCHE A. BROWN | : | CIVIL ACTION |
| | : | |
| v. | : | No. 16-1819 |
| | : | |
| POLICE CHIEF JOSEPH FRIEL | : | |
| *IN HIS INDIVIDUAL AND OFFICIAL* | : | |
| *CAPACITY*, et al. | : | |

## MEMORANDUM

**Juan R. Sánchez, C.J.**                                                                                    **August 26, 2019**

This matter stems from an intra-family dispute between pro se Plaintiff Blanche Brown and her estranged half-brother, James Brown, into which the Defendants in this action—Chief of Valley Township Police Joseph Friel, the Valley Township Supervisor, the Valley Township Police Department, and the Valley Township "Governing Board/Supervisors," were ultimately drawn.[1] At its core, Plaintiff's Amended Complaint alleges her civil rights were violated when she was twice cited for—but never convicted of—harassing James. Defendants moved for summary judgment on each of Plaintiff's numerous claims. Because no rational jury could, on the basis of the record before the Court, find in Plaintiff's favor as to any of her claims, the motion will be granted in its entirety.

## FACTS[2]

---

[1] In order to avoid confusion, the Court will refer to Blanche Brown as "Plaintiff" and her half-brother James Brown by his first-name.

[2] The following facts are taken from the evidence in the summary judgment record, which includes the attachments to Defendants' Motion for Summary Judgment (Document 73), Plaintiff's Opposition and Cross-Motion for Summary Judgment (Document 97), Defendants' Reply (Document 100), and Plaintiff's Sur-Reply (Document 102), which was filed without leave. The record in this matter is somewhat difficult to follow. Defendants appear to have simply attached the *entirety* of their bates-stamped production to their motion, which included duplicates and lacked any obvious organizational scheme. *See* Defs.' Ex. C. And while Plaintiff

Although it is not altogether clear how the conflict between Plaintiff and James began, the dispute reached a new level of acrimony when James sent a threatening email to Plaintiff from the email account of his girlfriend, Richelle Solomon, on April 8, 2014. VTWP00073 ("If you send me or Richelle another one of your fucking email[s] then **I'm** [going to] **give you a problem that you can't handle you crazy bitch**" (emphasis in original)).[3] Shortly thereafter, on April 15, 2014, both Plaintiff and James contacted the Valley Township Police Department about the other's alleged harassment. *See* VTWP00075 (noting James advised "he had been receiving harassing emails from his sister, Blanche Brown"); Opp'n Ex. 1-C-1 ("I most recently received what I consider to be a threatening email from James Brown"). On April 17, Friel directed both parties to cease contact with one another. VTWP00073 ("If you could[,] please [do] not email, text, call or have any contact with James. I have instructed James of the same."). Friel also invited Plaintiff to contact him if she received additional messages from James. *Id.*

Notwithstanding Friel's directive, Plaintiff emailed Solomon the following day to request "mediated peace talks" regarding the April 8 email that James sent from Solomon's account, VTWP00077, and made some kind of "appeal" to James (the contents of which do not appear in the record), *see* VTWP00034 ("My April 18 appeal to James was the best I knew how to try to [defuse] the threatening message that James had sent me." (emphasis in original)). Also on April 18, Friel issued a non-traffic citation to Plaintiff for committing the crime of harassment, in violation of 18 Pa. Cons. Stat. Ann. § 2709(a)(3), by "engag[ing] in a course of conduct by emailing the victim [i.e., James Brown] continually when requested to stop having contact with

---

attached her many exhibits with an index, the documents themselves appear to have been altered and annotated to include Plaintiff's explanation and interpretation.

[3] All references to items beginning with the pre-fix "VTWP" are references to Exhibit C to Defendants' Motion, which, as noted, appears to be Defendants' document production.

said victim." Pl.'s Ex. 3B. The citation was designated as "Mail Out," presumably indicating it would be mailed to Plaintiff, and was filed with the district court on April 24, 2014, which issued a summons. *Id.*; *see also* Pl.'s Ex. 3C.

On April 21, 2014, Plaintiff filed a Protection From Abuse (PFA) petition against James, citing, inter alia, a threat he allegedly made to Plaintiff's older brother on April 7 that he was going to "bust down Blanche's door" and the email James sent from Solomon's email account on April 8 as evidence in support of her reasonable fear of abuse. VTWP00110-128. On the strength of Plaintiff's allegations, a temporary PFA order was issued to Plaintiff, directing James not to "abuse, harass, stalk or threaten" Plaintiff in any place where she might be found and not to "contact Plaintiff, or any other person protected under this order, by telephone or by any other means, including through third persons." *Id.*

On April 23, 2014, James went to the Valley Township police station and reported to Friel that he had received a harassing letter from Plaintiff along with a copy of a PFA she filed against him. VTWP00076.[4] James stated Plaintiff had attempted to disguise the letter to make it appear like it came from Ms. Solomon. According to Friel's Complaint Report, Friel attempted to call Plaintiff about the matter, but when he identified himself, she hung up the phone. VTWP00076. Friel's report further noted that he had previously told Plaintiff not to have contact with James, as had another officer, and indicated Friel would be filing a second harassment citation for Plaintiff in district court. *Id.* Friel did, in fact, file a second citation, VTWP00017, but Plaintiff contends she never received it, *see* Pl.'s Ex. 4H ("Plaintiff first

---

[4] Attached to Defendants' Motion is a May 1, 2014, note written by James, in which he states that he received "multiple emails and postmarked mail from . . . Blanche Brown dating from April 4, 2014 through April 23, 2014." VTWP00080. He states that the letters "have been harassing and slanderous in nature, defaming my character and attempting to blackmail me." *Id.* Although this document was produced by Defendants, which suggests it was in their possession, it is not entirely clear whether Friel was aware of it, or when it was received.

received this citation through 'discovery' and it comes 2 and a half years after Chief Friel allegedly wrote it.").

Over the course of the next few weeks, Plaintiff repeatedly contacted Friel regarding her fear that James was trying to harm her. *See* VTWP00027-28 (April 28, 2014, Fax); VTWP00024-26 (April 28, 2014, Email); VTWP00029-30 (April 30, 2014, Email); VTWP00039-40 (May 1, 2014, Email); VTWP00038-39 (second May 1, 2014, Email); VTWP00032 (third May 1, 2014, Email); VTWP00055 (May 2, 2014, Email). The correspondence reflects her concerns that James cut her telephone lines and fired a gun near her home, as well as her increasing anger with law enforcements' efforts to protect her. For example, she complained to Friel that the Valley Township Police, West Caln Township Police, and West Sadsbury Township Police had each "re-victimized and re-traumatized" her. *See* VTWP00024. In another email, she complained to Friel that he had "given James permission to come after [her] with intent to kill [her]." VTWP00030. In yet another, she threatened to "do what ever is necessary to protect [herself]," claiming James "pulled the wool over your eyes." VTWP00038.

Plaintiff's accusations notwithstanding, Friel responded by reassuring her that his police department took her concerns seriously and directed her to continue to utilize the legal system to protect herself. *See* VTWP00024 (April 29, 2014, Email) ("I can assure you that our department treats every person and complaint the same. It does not make a difference as to what economic or ethnic classification a person is."); VTWP00041 (May 1, 2014, Email) ("If you[r] hearing is Monday[,] I suggest that you explain all to the Judge and ask for a PFA that is [permanent]"); VTWP00033 (second May 1, 2014, Email); and VTWP00039 (third May 1, 2014, Email) ("I spoke with James, and I am confident he is not going to do harm to you."). Of particular concern

to this litigation, Friel advised Plaintiff that she could not contact James, having obtained a PFA against him. Specifically, he wrote:

> You cannot file a PFA against a person and then turn around and contact them. A PFA is an order preventing contact between you and the party that you have named on the PFA. If you file a PFA and then make contact with the party you named on the PFA you are not obeying the ordering Judge who signed the PFA. A PFA does not give you the right to contact the party you have named in the PFA. Please feel free to contact my office. You are much welcomed to come to the office and speak to me directly if you would like.

VTWP00024.

On May 5, 2014, Plaintiff appeared for a PFA hearing. Prior to the hearing, Plaintiff requested that Friel escort her. *See* VTWP00055. He declined but indicated that he would contact the sheriff's department to ensure that her safety concerns were addressed. *See* VTWP00054 ("I cannot escort you to the court, but I will be calling the Sheriff's Dept. as to ensure your concerns are addressed."). After the hearing, Plaintiff emailed Friel to inform him that the court had refused to make the initial PFA permanent and to express her belief that the PFA had been dismissed as "an 'ata-boy' to James for having the stamina to 'defend himself' so vigorously." *Id.* Later that day, Plaintiff sent another email to Friel, complaining that James is a "classic sociopath/psychopath" and that the "presiding judge seems to lower the standard for men of color who are accused of abuse." VTWP00056. A few days later, on May 10, Plaintiff contacted Solomon via Facebook to complain that Solomon's "Pollyanna notions nearly got [Plaintiff] killed (twice!)" by James, and to accuse her of instigating James's purported "plan to stalk" Plaintiff. VTWP00062. The next day, Plaintiff sent an email to James threatening kill herself because of his "abuse and betrayal," stating that her "tormented soul" was "going to haunt" him "to [his] grave." VTWP00057 (emphasis omitted).

Between May 13, 2014, and June 3, 2014, Plaintiff contacted Friel on at least eight separate occasions to report on the threat purportedly posed by James and express her frustration about Friel's failure to adequately respond, which Plaintiff claimed amounted to complicity in the purported plan to kill her. *See* VTWP0068-69 (May 13, 2014, Fax); Pl.'s Ex. 2-1E (May 19, 2014, Email); VTWP00070-72 (May 21, 2014, Fax); VTWP00094-95 (May 27, 2014, Fax); VTWP00096 (May 28, 2014, Fax);[5] and VTWP00093 (June 15, 2014, Email). There is no evidence in the record that Friel responded to Brown's attacks.

On June 3, 2014, a summary trial was convened on the April 18 citation. The trial was continued after Magisterial District Judge Grover Koon, the presiding officer, allegedly coerced the Plaintiff into signing a mutual no-contact order by concealing the title of the document ("Alternative Sentencing Contract") with the sleeve of his robes. *See* Pl.'s Ex. 4G.[6] On September 10, 2014, both the April 18 and April 24 citations were withdrawn. *See* Defs.' Ex. B, at 3, 5. The record reflects that, at no time, was Plaintiff ever convicted, punished, or otherwise restricted in any way by virtue of the citations. *Id*. In point of fact, it appears that Plaintiff never even saw the second citation. *see* Pl.'s Ex. 4H ("Plaintiff first received this citation through 'discovery' and it comes 2 and a half years after Chief Friel allegedly wrote it.").

After the citations were withdrawn, Plaintiff began contacting Friel and other Valley Township officials to complain about Friel's handling of her complaints about James. In one email from October, 2014, Plaintiff complained to Valley Township officials that Friel "incited violence" against her when he "knowingly supported and encouraged the actions of a known

---

[5] The fax on this date, May 28, 2014, indicates that Plaintiff was following up on two phone calls to Friel that she had placed earlier that day.

[6] The document directs Plaintiff to have "no contact" or "third party contact," presumably with James. Opp'n Ex. 4G. The document does not appear to obligate Plaintiff to pay any fine or court costs, and appears to have set September 10, 2014, as the expiration of the no contact agreement. *Id.*

serial batterer with misogyny, rage and violence issues, mental illness and emotional disturbances." VTWP00098. In another note, Plaintiff told the Chief of the West Sadsbury Township Police Department that Friel "supported, coddled[,] encouraged and even advised [Plaintiff's] harasser(s) to continue to take adverse actions against [her]." VTWP00011 (emphasis omitted). The fax goes so far as to accuse Friel of "instigat[ing] the conflict and encourage[ing] James A[.] Brown, a sociopath to attempt to kill [her]." *Id.* On October 20, 2014, Plaintiff sent Friel the same fax three times in less than an hour, demanding, inter alia, that Friel file charges against Solomon. *See* VTWP00001-9.

On April 4, 2016, Plaintiff commenced this action by filing a Complaint, which was later amended. In her Amended Complaint, Plaintiff brings 25 causes of action against Friel, Judge Koon, "Valley Township Manager/Administrator" in his or her official capacity, Valley Township Police Department, and "Valley Township Governing Board/Supervisors."[7] On January 24, 2017, Defendants moved for summary judgment. Plaintiff opposed the motion and filed her own cross-motion for summary judgment, which the Court denied in a previous order. The Court heard oral argument Defendants' motion on April 26, 2017. The matter is now ripe for decision.

**DISCUSSION**

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine"

---

[7] On January 19, 2017, the Court dismissed Judge Koon from this action with prejudice. *See* Order, Jan. 17, 2017, ECF No. 69.

dispute is one where "the evidence is such that a reasonable jury could return a verdict for the [non-moving] party." *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation and internal quotation marks omitted). To defeat summary judgment, "the non-moving party must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the [non-movant]." *Burton v. Teleflex, Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (alteration in original) (citation and internal quotation marks omitted).

The Court begins its analysis with Brown's claims under 42 U.S.C. § 1983,[8] which creates a statutory mechanism for private individuals to vindicate their federal constitutional rights. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994) ("Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." (internal quotation marks omitted)). To prevail on her claims, Plaintiff must produce evidence that "a person acting under color of state law engaged in conduct that violated a right protected by the Constitution or laws of the United States." *Morrow v. Balaski*, 719 F.3d 160,

---

[8] In pertinent part, 42 U.S.C. § 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

165-66 (3d Cir. 2013). In evaluating a § 1983 claim, a court must first "identify the exact contours of the underlying right said to have been violated." *Id.* at 166 (quoting *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (en banc)). The Court must then "determine whether the plaintiff has alleged a deprivation of a constitutional right at all." *Id.*

As discussed in greater detail below, Plaintiff asserts several claims for violations of her rights. Specifically, she asserts claims for malicious prosecution in violation of her Fourth and Fourteenth Amendment rights (Counts 1 and 8), a claim for a state created danger in violation of her substantive due process rights under the Fourteenth Amendment (Count 2), a claim for the use of fabricated evidence in violation of her Fourteenth Amendment due process rights (Count 5), and claims for intentional discrimination on the basis of her race and gender in violation of the Equal Protection Clause of the Fourteenth Amendment (Counts 7, 10, and 16). She also asserts claims for violations of her constitutional rights by Valley Township and its police department pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), which overlap with some of her non-*Monell* claims (Counts 11, 18, and 19). The Court addresses each of these categories of claims in turn.

Counts 1 and 8 assert claims against Friel for malicious prosecution in violation of Plaintiff's right to be free from unreasonable seizures under the Fourth Amendment and her right to procedural due process under the Fourteenth Amendment.[9] To prevail on the Fourth Amendment claim, Plaintiff must show:

(1) The defendant initiated a criminal proceeding;
(2) The criminal proceeding ended in the plaintiff's favor;

---

[9] Although the Amended Complaint does not consistently identify which claim is asserted against which Defendant, it appears that most of Plaintiff's claims—with several exceptions—are asserted against Friel. The exceptions appear to be Plaintiff's *Monell* claims, her claims for which no factual averments are made, and the claims which were asserted against Judge Koon exclusively.

(3) The defendant initiated the proceeding without probable cause;

(4) The defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and

(5) The plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Halsey v. Pfieffer*, 750 F.3d 273, 296-97 (3d Cir. 2014). Defendants are entitled to summary judgment on this claim (Count 1) because Plaintiff has failed to produce evidence sufficient to create a genuine issue of material fact as to the fifth element.[10]

Although the concept of a "seizure" is flexible enough to include circumstances beyond physical detention, *see Gallo v. City of Phila.*, 161 F.3d 217, 222 (3d Cir. 1998), it is not so broad as to encompass situations where the plaintiff was "only issued a summons" and was "never arrested; . . . never posted bail; . . . [remained] free to travel; and . . . did not have to report to Pretrial Services," *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005). Here, although a summons was issued for each of Friel's harassment citations, Plaintiff has adduced no evidence that she was ever arrested, required to post bail, limited in her travel, or required to report to Pretrial Services. Indeed, at least as to the second harassment citation, it appears that Plaintiff was not even aware the citation existed for some time after it was issued. As a result, the Court finds that Plaintiff failed to establish a "deprivation of liberty consistent with the concept of seizure." *Halsey*, 750 F.3d at 297.

Even if Plaintiff could show that she suffered a deprivation of liberty consistent with the concept of seizure as a result of Friel's citations the Court would nevertheless grant summary judgment because Plaintiff has failed to produce evidence that Friel acted "maliciously or for a

---

[10] Plaintiff appears to assert this claim against Valley Township Police Department, the Valley Township Manager, and Valley Township Board of Supervisors, under the doctrine of respondeat superior. *See* Am. Compl. ¶ 69. However, "a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691. Summary judgment is therefore entered on this claim in favor of these Defendants.

purpose other than bringing [her] to justice." *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003). "Actual malice in the context of malicious prosecution is defined as either ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose." *Henderson v. City of Phila.*, 853 F. Supp. 2d 514, 519 (E.D. Pa. 2012) (quoting *Lee v. Mihalich*, 847 F.2d 66, 70 (3d Cir. 1988)). Here, Plaintiff has produced no evidence from which a rational factfinder could find Friel acted spitefully, did not believe in the propriety of the harassment citations, or used his authority to initiate prosecution for an improper purpose. Summary judgment is therefore warranted on Count 1. [11]

---

[11] Count 1 of the Amended Complaint also asserts a claim for malicious prosecution under "PA statute," but does not identify the statute. To the extent Plaintiff invokes the Dragonetti Act, Defendants are entitled to summary judgment because the statute applies to the misuse of *civil* proceedings, and there is no evidence before the Court suggesting Defendants instituted such proceedings against Plaintiff. *See Schmidt v. Currie*, 470 F. Supp. 2d 477, 480 (E.D. Pa. 2015) (noting the Dragonetti Act "codified the common law cause of action for wrongful use of civil proceedings.").

Defendants are also entitled to summary judgment to the extent Plaintiff alleges a Pennsylvania common law malicious prosecution claim. The tort of malicious prosecution requires the plaintiff to establish the Defendant "instituted proceedings against the plaintiff 1) without probable cause, 2) with malice, and 3) the proceedings . . . terminated in favor of the plaintiff." *Kelley v. Gen. Teamsters, Chauffeurs & Helpers, Local Union 249*, 544 A.2d 940, 941 (Pa. 1988); *see also Boseman v. Upper Providence Twp.*, 680 F. App'x 65, 71 (3d Cir. 2017).

Here, Plaintiff has failed to establish a genuine issue of material fact as to the first element of her claim: the absence of probable cause. "Probable cause is a reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that the party is guilty of the offense." *Tomaskevitch v. Specialty Records Co.*, 717 A.2d 30, 33 (Pa. Commw. Ct. 1998); *see also Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995) (noting probable cause is present "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been . . . committed by the person to be arrested."). Given James and Richelle Solomon's complaints about Plaintiff's unwanted contact and Plaintiff's failure to follow Friel's directions, the Court finds that the police chief had probable cause to suspect that Plaintiff twice committed the crime of harassment. *See* 18 Pa. Con. Stat. § 2709(a)(3) ("A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person . . . engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose."). As a result, Defendants are entitled to summary judgment. *See Tomaskevitch*, 717 A.2d at 33 ("The showing of probable cause is an absolute defense to a charge of malicious prosecution.").

The Court will also grant summary judgment in Defendants' favor on Plaintiff's Fourteenth Amendment malicious prosecution claim against Friel (Count 8).[12]  Although a claim for malicious prosecution based on police conduct that violates the procedural component of the Fourteenth Amendment Due Process Claims is cognizable in this Circuit, *see Torres v. McLaughlin*, 163 F.3d 169, 173 (3d Cir. 1998), the contours of such a claim remain ill-defined. *See Braunstein v. Paws Across Pittsburgh*, No. 18-788, 2019 WL 1458236 at *5 (W.D. Pa. Apr. 2, 2019); *McCormack v. Livergood*, 353 F. Supp. 3d 357, 364 (M.D. Pa. 2018); *Thomas*, 290 F. Supp. 3d at 381. In *Washington v. Henshaw*, a non-precedential opinion, the Third Circuit affirmed the grant of judgment on the pleadings on a Fourteenth Amendment malicious prosecution claim where the plaintiff "merely recite[d] the elements of a procedural due process claim without explaining what process he was owed and how that process was denied." 552 F. App'x 169, 174 (3d Cir. 2014). Although mindful of *Washington*'s non-precedential status, the Court finds summary judgment is warranted here for the same reason. The title of Count 8 references the Fourteenth Amendment, but neither the allegations in the body of Count 8, nor Brown's Opposition or Reply briefs, explain what process she was owed and how that process was denied. As a result, the Court will grant Defendants summary judgment on this claim as well.

In Count 2, Plaintiff seeks to recover against Friel for a violation of her Fourteenth Amendment substantive due process right under a state created danger theory. The gravamen of Count 2 is that Friel put Plaintiff's life in danger by communicating with James Brown and filing the harassment citations against her.

---

[12] A malicious prosecution claim cannot be predicated on a violation of the Fourteenth Amendment's right to substantive due process. *See Albright*, 510 U.S. at 274 ("We do hold that substantive due process, with its scarce and open-ended guideposts can afford [a plaintiff alleging malicious prosecution in violation of the Fourteenth Amendment] no relief.").

The Due Process Clause of the Fourteenth Amendment does not generally impose any affirmative obligation on government actors to protect life, liberty or property from harm by private actors. *See DeShaney v. Winnebago Cty. Soc. Servs. Dep't*, 489 U.S. 189, 195-96 (1989). Nevertheless, the Third Circuit allows an exception to this rule where a "state-created danger" is involved, i.e. "when the state acts in a way that makes a person substantially more vulnerable to injury from another source than he or she would have been in the absence of state intervention." *Scheiber v. City of Phila.*, 320 F.3d 409, 416 (3d Cir 2003). Defendants argue they are entitled to summary judgment because Plaintiff has failed to produce evidence Friel affirmatively misused his authority in a way that created a danger to Plaintiff that was greater than if Friel had not acted at all.[13]

To prevail on a state created danger theory, a plaintiff must establish:

(1) the harm ultimately caused was foreseeable and fairly direct;

(2) a state actor acted with a degree of culpability that shocks the conscience;

(3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Bright v. Westmoreland Cty.*, 443 F.3d 276, 281 (3d Cir. 2006) (internal quotations omitted).

---

[13] The Third Circuit recognizes a related, but distinct, exception to *Deshaney* for circumstances in which the government fails to protect a citizen where there is a custodial relationship between the plaintiff and the government-defendant. *See Sanford v. Stiles*, 456 F.3d 298, 304 n.5 (3d Cir. 2006). However, Brown does not purport to rely on this "special relationship" theory. The most natural reading of the Amended Complaint is that Brown is proceeding on a "state-created danger" theory, which does not require detention. *See Phillips v. Cty. of Armstrong*, 515 F.3d 224, 242 (3d Cir. 2008) ("Finally, the state-created danger analysis requires that some relationship existed between the state and the plaintiff. . . To adequately allege such a relationship, a plaintiff need not plead facts that show the same 'special relationship' basis for constitutional liability.").

The Court will grant summary judgment in Defendants' favor because Plaintiff has failed to produce evidence from which a reasonable jury could find in her favor on the second and fourth elements of her claim. As to the second element, there is no evidence from which a jury could find Friel acted with a degree of culpability that would shock the conscience. In this Circuit, "[t]he level of culpability required to shock the conscience increases as the time state actors have to deliberate decreases." *Sanford*, 456 F.3d at 309. "In a hyper[-]pressurized environment, an intent to cause harm is usually required. On the other hand, in cases where deliberation is possible and officials have the time to make unhurried judgments, deliberate indifference is sufficient." *Id.* In situations that fall between these two poles, i.e., "situations in which there is some urgency and only hurried deliberation is practical," the Court must inquire "whether the officer consciously disregarded a great risk of harm." *Id.* at 310. In all cases, negligence is "not enough" to shock the conscious. *Id.* at 311.

Given that the events at issue in Plaintiff's Amended Complaint took place over a period of days and weeks, Friel had time to consider the appropriate course of action under the circumstances, and thus the "deliberate indifference" standard applies. *See Phillips*, 515 F.3d at 241 (applying the deliberate indifference standard where defendants "had sufficient time to proceed deliberately"). To establish "deliberate indifference" in the state-created danger context, a plaintiff must produce evidence showing the defendant consciously disregarded a substantial risk of serious harm. *See Vargas v. City of Phila.*, 783 F.3d 962, 973 (3d Cir. 2015) (quoting *Ziccardi v. City of Phila.*, 288 F.3d 57, 66 (3d Cir. 2002)); *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 911 (3d Cir. 1997) ("[T]he state's actions must evince a willingness to ignore a foreseeable danger or risk.").

Even assuming James posed a substantial risk of serious harm to Plaintiff, the evidence in the record does not support a reasonable inference that Friel was deliberately indifferent to Plaintiff's safety. Notwithstanding that Friel may not have done precisely as Plaintiff wished, the record reflects he did not ignore Plaintiff's many complaints. For example, when she expressed her fear of James prior to attending a PFA hearing, Friel (1) directed Plaintiff to take advantage of the legal mechanisms available to her, *see* VTWP00041 ("If you[r] hearing is Monday[,] I suggest that you explain all to the Judge and ask for a PFA that is [permanent]"); (2) called the Sheriff's Department to alert them of Plaintiff's concerns, *see* VTWP00054 ("I cannot escort you to the court, but I will be calling the Sheriff's Dept. as to ensure your concerns are addressed."); and (3) contacted James on Plaintiff's behalf to seek reassurance that Plaintiff would be safe at the hearing, VTWP00039 ("I spoke with James, and I am confident he is not going to do harm to you."). These are not the only examples of Friel's sensitivity to James's possible threat. When Plaintiff complained James was violent based on his purported history of assaulting other women, Friel requested that Plaintiff provide additional information for follow-up investigation. *See* Opp'n Ex. 4-B ("I . . . highly suggest that if you have information pertaining to assaults carried out by James Brown that you forward that information to the proper authorities and make them aware."); Am. Compl. Ex. 8C ("Could you kindly forward names to me in reference to the assaults that you alleged to have taken place."). And, when Plaintiff indicated that James had purportedly been violent toward Richelle Solomon, Friel, again, promised to conduct follow-up investigation. Opp'n Ex. 2-2E ("I will be calling the West Caln Police Department to check [on] their contact with James as I want to know the story of what happened out in West Caln."). Although Plaintiff may have been dissatisfied with the extent of Friel's responses, her unhappiness is not a basis from which a rational factfinder could find deliberate indifference. In

the absence of evidence Friel consciously disregarded a substantial risk of harm, the Court finds no genuine issue of material fact as to the second element of Plaintiff's state created danger claim. Therefore, summary judgment will issue in Defendants' favor.

Defendants are also entitled to summary judgment on the claim because Plaintiff has failed to produce evidence Friel (or any other Defendant) took an affirmative act which created a danger to her or rendered her more vulnerable to danger than had he (or any other Defendant) not acted at all. To satisfy this fourth-element, Plaintiff must show that the state used its authority in an affirmative way to place her in danger. *See Bright*, 443 F.3d at 282 (noting the Third Circuit has "never found a state-created danger claim to be meritorious without an allegation and subsequent showing that state authority was affirmatively exercised"). When reviewing the evidence, the Court must consider "whether a state actor's behavior constituted an affirmative act, and if so, whether the affirmative act created a foreseeable opportunity for harm." *Id.* at 283 n.7. The failure to protect an individual is not an actionable "affirmative act" for purposes of a state created danger claim. *See Sanford*, 456 F.3d at 312.

Here, Brown has failed to proffer evidence from which a jury could find that Friel undertook an affirmative act which put Plaintiff at foreseeable risk of harm. In her Sur-Reply, Plaintiff identifies what she claims are sixteen separate affirmative acts by Friel that put her at some kind of risk. However, her allegations do not withstand scrutiny. Many of these items refer to Friel's failure to act, which cannot support Plaintiff's claim. *See Sanford*, 456 F.3d at 312. The balance of the items on the list are conclusory allegations disconnected from any evidence in the record. For example, Plaintiff accuses Friel—without evidence—of using his authority for the purpose of "ENTRAPPING Ms. Brown," "USING THE THREAT of criminal charges as leverage to PERSUADE/INTIMDATE Ms. Brown," "SUBBORNING . . . perjury," "INVITING

further harassment against Ms. Brown," "BROWBEATING and INTIMIDATING Ms. Brown," and "ESTABLISHING his own home-grown laws and then MANUFACTURING a crime for the purpose of prosecuting Ms. Brown." Sur Reply 12-13 (capitalization in original). At this stage, it is the evidence—not the allegations—that matters. Because Plaintiff has failed to produce evidence of an affirmative act by Friel which put her at foreseeable risk of harm, the Court will grant summary judgment to Defendants. Because Plaintiff has failed to establish genuine issue of material fact as to Friel's level of culpability and any affirmative act which put Plaintiff at a foreseeable risk of harm, the Court will grant summary judgment on Plaintiff's state created danger claim (Count 2).[14]

In Count 5, Plaintiff brings a § 1983 claim against Friel for violation of her right to procedural due process based on his alleged fabrication of evidence. To prevail, a plaintiff must show "reasonable likelihood that, absent that fabricated evidence, the [plaintiff] would not have been criminally charged." [15] *Black*, 835 F.3d at 371. This standard presupposes the existence of fabricated evidence, which, according to the Third Circuit, must be more than simply incorrect or disputed evidence. *Halsey*, 750 F.3d at 295; *see also*, *Black*, 835 F.3d at 372 (describing the

---

[14] Because the Court's determination as to the second and fourth elements of the state-created danger test are dispositive, the Court need not address whether Plaintiff has satisfied the first and third elements of the claim.

[15] Under Third Circuit precedent a defendant need not have been convicted to bring a stand-alone fabrication of evidence claim. *See Black v. Montgomery Cty.*, 835 F.3d 358, 371 (3d Cir. 2016) ("[A]n acquitted criminal defendant may have a stand-alone fabricated evidence claim against state actors under the due process clause of the Fourteenth Amendment."). Although the Third Circuit does not appear to have considered the issue, at least one other court in this district has held that dispositions other than a conviction or acquittal can give rise to a stand-alone claim for a due process violation based on fabricated evidence, *see Klein v. Madison*, No. 17-4507, 2019 WL 1558471, at *23 n.32 (E.D. Pa. Apr. 10, 2019) (finding that the plaintiff could bring a § 1983 due process claim based on fabricated evidence even though her criminal case resulted in participation in the Accelerated Rehabilitative Disposition program and did not result in either a conviction or acquittal). The Court assumes without deciding that withdrawn charges could provide an adequate basis for a falsification of evidence claim.

standard for evidence to be considered fabricated as a "notable bar"). Rather, there must be "persuasive evidence supporting a conclusion that the proponents of the evidence are aware that the evidence is incorrect or that the evidence is offered in bad faith." *Black*, 835 F.3d at 372 (quoting *Halsey*, 750 F.3d at 295).

Here, Plaintiff's claim is based on the two criminal citations issued to her for harassment. Each of the citations contains a description of the nature of the offense. *See* Defs.' Mot. Summ J. Ex. C, at 17-18. The April 18, 2014, citation describes the "nature of the offense" as: "THE ABOVE DEF. DID EN-GAGE IN A COURSE OF CONDUCT BY EMAILING THE VICTIM CONTINUALLY WHEN REQUESTED TO STOP HAVING CONTACT WITH SAID VICTIM." *Id.* at 17 (emphasis in original). The second citation, which was issued a few days later, describes the offense conduct similarly: "THE ABOVE DEF. DID ENGAGE IN A COURSE OF CONDUCT BY MAILING THE VICTIM WHEN REQUESTED TO HAVE NO CONTACT WITH THE VICTIM. ACT DID ALARM THE VICTIM." *Id.* at 18 (emphasis in original). Although Plaintiff may disagree with Friel's characterization of her communications as harassing, she does not dispute that she authored them, nor has she produced any persuasive evidence suggesting that Friel, or any other Defendant, manufactured them. As a result, she has failed to establish a genuine issue of material fact as to the existence of fabricated evidence and Defendants are, therefore, entitled to summary judgment on this claim.

Counts 7, 10, and 16 allege § 1983 claims for deprivation of Plaintiff's Fourteenth Amendment right to "equal protection of the laws" based on her race and gender.[16] *See* U.S. Const. Amend. XIV § 1. Plaintiff's theory is that Friel deprived her of equal protection of the

---

[16] As noted elsewhere, Plaintiff does not consistently specify the particular Defendants against whom she is asserting a claim. Here, it appears that Count 7 is directed against Friel and Counts 10 and 16 are asserted against all Defendants.

laws by citing her, an African American woman, for harassment, but not James Brown, an African American man, or Richelle Solomon, a white woman. The Court construes these claims as advancing selective enforcement theories.

A plaintiff claiming selective enforcement must demonstrate "(1) that [she] was treated differently from other similarly situated individuals, and (2) 'that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor.'" *Dique v. N.J. State Police*, 603 F.3d 181, 184 (3d Cir. 2010) (quoting *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005)). As to the first element, "[p]ersons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant respects.'" *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). As to the second element, a plaintiff "must provide evidence of discriminatory purpose, not mere unequal treatment or adverse effect." *Jewish Home of E. Pa. v. Ctrs. for Medicare & Medicaid Servs.*, 693 F.3d 359, 363 (3d Cir. 2012). "A federal constitutional violation does not exist merely because of the 'exercise of some selectivity in enforcement.'" *Karns v. Shanahan*, 879 F.3d 504, 521 (3d Cir. 2018) (quoting *Oyler v. Boles*, 368 U.S 448, 456 (1962)). Rather, a claim for "intentional discrimination requires evidence of a malicious bad faith intent to injure." *Greco v. Senchak*, 25 F. Supp. 3d 512, 518 (M.D. Pa. 2014).

The Court focuses on the second element of the Equal Protection Clause analysis because even if Plaintiff could show she was similarly situated to James or Solomon (which seems unlikely based on the record before the Court), there is no evidence to support an inference that Plaintiff's race or gender motivated Friel's decision to cite her. The totality of the relevant evidence is (1) the fact Friel cited Plaintiff and not James or Solomon, (2) Friel's report regarding James's in-person complaint, (3) the text of the two citations, and (4) Friel's responses

to Plaintiff's numerous communications to him. None of these documents, even when construed in the light most favorable to Plaintiff, supports an inference that Friel was biased against her because of her race or gender. Indeed, the record shows that Friel bore the brunt of Plaintiff's steady stream of often-vitriolic emails, faxes, and telephone calls, without responding in-kind (much less in any way suggestive of impermissible bias). As a result, the Court concludes no rational jury could find in Plaintiff's favor on the second element of her selective enforcement claim. Summary judgment will, therefore, issue in Defendants' favor on Counts 7, 10, and 16.

Plaintiff suggests she "could" bring equal protection claims based on the existence of a facially discriminatory policy or a "class of one" theory. To the extent she does advance such theories, Defendants are entitled to summary judgment.

As to the first theory, Plaintiff's claims would survive summary judgment if she could point to a policy that, by its terms, singles out African-Americans or women for different treatment. *See Hassan v. City of New York*, 804 F.3d 277, 294 (3d Cir. 2015). She theorizes that "Police Friel's established an unwritten policy and practice of accusing and prosecuting women of color Protection From Abuse petitioners of in Friel's and Koon's words 'violating their own PFA Order'—when in Fact PA Act 23 does not have any such language or provisions that penalize the Abuse Victim." Opp'n 23-24. However, Plaintiff cites no evidence in the record to support the existence of this policy (other than her say-so), and such conjecture does not entitle her to present her theory to a jury.

Defendants are also entitled to summary judgment to the extent Plaintiff asserts a class of one equal protection theory, which allows a plaintiff to recover where she "alleges that [she] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir.

2006) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)); *see also Phillips*, 515 F.3d at 243. The primary difference between a traditional equal protection claim and a "class of one" claim is that a "class of one" plaintiff need not establish membership in a protected class. Rather, a plaintiff must produce evidence of three elements: "(1) the defendant treated [her] differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill*, 455 F.3d at 239. "A 'class of one claim, like any equal protection claim evaluated under rational basis review, cannot succeed 'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Price v. City of Phila.*, 239 F. Supp. 3d 876, 900 (E.D. Pa. 2017) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)). In order to sustain claims of intentional discrimination in this context, a plaintiff must produce evidence "the decisionmaker selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects." *Jewish Home*, 693 F.3d at 363.

Defendants are entitled to summary judgment on this theory for the same reason they are entitled to summary judgment on Plaintiff's selective enforcement theory. Even assuming the Court could consider Plaintiff to be similarly situated to James Brown and Richelle Solomon (which seems unlikely, given that it appears to have been Plaintiff who, in the aftermath of Friel's no contact order, contacted James and Solomon), there is no evidence that Friel cited Plaintiff with a malicious intent. As noted above, none of the evidence of Friel's conduct supports an inference that Friel singled out Plaintiff for disparate treatment. As a result, the Defendants are entitled to summary judgment to the extent Plaintiff advances a class of one theory.

In sum, the Court will grant the Defendants' motion as to Counts 7, 10, and 16 because Plaintiff has failed to produce evidence from which a jury could find in her favor and Defendants are entitled to judgment as a matter of law.

Count 11 of the Amended Complaint asserts a § 1983 claim against Friel based on a supervisory liability theory.[17] Plaintiff complains that Friel "implicitly or explicitly established/adopted and implemented careless and reckless internal policies, customs, or practices." Am. Compl. ¶ 108. She identifies three alleged policies: (1) responding to stalking situations "with dismissiveness and threats—as a deterrent to victims," (2) "railroading and maliciously prosecuting outsiders" to make money for the township, and (3) "protecting and covering up crimes committed by old friends and [T]ownship residents when the crimes are committed against non-[T]ownship residents." *Id.*

The Third Circuit recognizes several theories of supervisor liability under § 1983, only two of which are pertinent to Count 11. First, "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.3d 720, 725 (3d Cir. 1989)). And second, a supervisor may be liable "if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *Id.* (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995)). In addition, for supervisors and policymakers to be liable, there must be

---

[17] Count 11 also includes allegations against Judge Koon. Because Judge Koon was previously dismissed from this case with prejudice, the Court need not address the allegations pertaining to him. *See* Order, Jan. 19, 2017, ECF No. 69.

"a causal connection between the supervisor's actions and the violation of plaintiff's rights." *Okocci v. Klein*, 270 F. Supp. 2d 603, 612 (E.D. Pa. 2003).

Plaintiff has not produced evidence to support liability under either of these theories. As an initial matter, there is no evidence in the record from which a rational factfinder could conclude Friel established, maintained, or even acquiesced to, a policy, practice, or custom which directly impinged on Plaintiff's constitutional rights. Although the Amended Complaint and Plaintiff's various memoranda include a number of allegations of purported misconduct by Friel, the allegations lack sufficient evidentiary support to survive scrutiny under Rule 56. Having reviewed the record in-depth and considered it in light most favorable to Plaintiff, the Court concludes that no rational factfinder could evaluate the evidence proffered by Plaintiff and find Friel maintained a policy or custom of mistreating victims of stalking, generating revenue by prosecuting non-residents, or covering up for his friends. Moreover, there is no evidence Friel participated in violations of Plaintiff's rights, directed others to violate her rights, or acquiesced in the violation of her rights. As a result, Defendants are entitled to summary judgment on Count 11.

Counts 12 and 17 assert claims against all Defendants for conspiracy to violate 42 U.S.C. § 1983, and conspiracies in violation of 42 U.S.C. § 1985(2) and (3).[18] Conspiracies under § 1983 and § 1985(3) are distinct causes of action, but each requires a successful plaintiff to establish an underlying constitutional injury. *See Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997) (noting the fourth element of a claim under 42 U.S.C. § 1985(3) is "an injury to person or property or the deprivation of any right or privilege of a citizen of the United States"); *Klein v.*

---

[18] Count 17 also identifies 18 U.S.C. § 242 as a possible basis for her claim. This statute establishes *criminal* liability for a deprivation of rights under color of law but does not give rise to a civil cause of action. *See Kennedy v. Equifax, Inc.*, No. 18-214, 2019 WL 1382649, at *5 (E.D. Pa. Mar. 27, 2019). As a result, the Court need not address whether it applies.

*Madison*, 374 F. Supp. 3d 389, 421 (E.D. Pa. Apr. 10, 2019) ("The plaintiff also must establish the 'predicate' constitutional tort to succeed on a claim for civil conspiracy [to violate 42 U.S.C. § 1983].") (quoting *Glass v. City of Phila.*, 455 F. Supp. 2d 302, 359-360 (E.D. Pa. 2006)). For the reasons discussed in greater detail above, Plaintiff has failed to adduce sufficient evidence from which a rational jury could find that she suffered such a constitutional injury, i.e. a deprivation of her rights (or an injury to her person or property). Absent such an injury, Plaintiff cannot recover for a conspiracy to violate § 1983 or for a violation of § 1985(3). Summary judgment will be granted in Defendants' favor on Counts 12 and 17 insofar as they allege conspiracy claims under § 1983 or § 1985(3).

The Court will also grant summary judgment on Counts 12 and 17 to the extent they rely on 42 U.S.C. § 1985(2). This Reconstruction Era statute prohibits, inter alia, conspiracies "for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws."[19] In this Circuit, to prevail on a claim under this provision of § 1985(2), a plaintiff must show the conspiracy was motivated by "class-based, invidiously discriminatory animus." *Brawer v. Horowitz*, 535 F.2d 830, 840 (3d Cir. 1976) (affirming dismissal of claim under 42 U.S.C. § 1985(2) where the complaint failed to allege defendants' "class-based, invidiously discriminatory animus"); *see also Martinez v. United States*, No. 17-3264, 2018 WL 5313181, at

---

[19] 42 U.S.C. § 1985(2) has two clauses. The first clause prohibits conspiracies to obstruct justice in "any court of the United States." 42 U.S.C. § 1985(2). Because there is no federal proceeding (other than this one) to which the alleged conduct in this case pertains, the first clause is inapplicable. S*ee Fetzer v. Cambria County Human Services*, 384 F. Supp. 2d 813, 817 (W.D. Pa. 2005) ("[T]he federal nexus to causes of action based upon the first portion of § 1985(2) . . . is a connection to proceedings in federal court.") (citing *Brawer v. Horowitz*, 535 F.2d 830, 840 (3d Cir. 1976)). The Court therefore focuses on the second clause of § 1985(2), which "aims at proscribing conspiracies that interfere with the administration of justice in state courts." *Breslin v. Brainard*, No. 01-7269, 2002 WL 3153425, at *9 (E.D. Pa. Nov. 1, 2002).

*4 (E.D. Pa. Oct. 26, 2018) ("Conspiracy claims of the second [clause of § 1985(2)] require an allegation of racial or class-based invidiously discriminatory animus."). To make this showing, a plaintiff must show "both that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious." *Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006).[20]

Even assuming Plaintiff could show the other elements required to state a successful § 1985(2) claim, her cause of action must fail because she has not established a genuine issue of fact as to the Defendants' purported discriminatory animus. As the Court has concluded elsewhere, there is insufficient evidence—direct or circumstantial—from which a rational factfinder could conclude that whatever actions Friel, Judge Koon, or any of the other Defendants took against Plaintiff were motivated by her gender or race.[21] Perhaps the closest Plaintiff comes is her argument that Defendants imposed "barriers" to "a fair process" by intentionally failing to notify her of the second harassment citation. *See* Opp'n 30. Even assuming this failure could be construed as a constitutional injury, Plaintiff has proffered no evidence suggesting that Defendants were motivated to cause whatever harm may have resulted

---

[20] The Third Circuit's decision in *Farber* addressed the showing necessary to establish "class-based invidiously discriminatory animus" for the purpose of a claim under § 1985(3). 440 F.3d at 135. However, the showing is the same under § 1985(2) and 1985(3). *See Tarapchack v. Lackawanna County*, 173 F. Supp. 3d 57, 72 (M.D. Pa. 2016) ("To the extent [plaintiff] is suing Defendants under § 1985(2) or (3), her claims are dismissed because both claims require plaintiff allege 'some racial or perhaps otherwise class-based, invidiously discriminatory animus.'" (quoting *Farber*, 440 F.3d at 135)); *Walker v. City of Phila.*, No. 09-2071, 2009 WL 3103733, at *1 (E.D. Pa. Sept. 18, 2009) ("To state a claim under § 1985(2) (second clause) or (3), a plaintiff must allege that the defendants' actions were motivated by racially discriminatory animus.").

[21] Plaintiff belongs to two classes of individuals who might bring a § 1985 claim: women and African Americans. *See Farber*, 440 F.3d at 138 (noting that, while the Supreme Court "has never found that a criterion other than race can serve as the basis for a qualifying class [under § 1985] . . . [the Third Circuit has] held that victims of discriminatory animus directed at women . . . may state a claim" (internal citations omitted)).

(of which there is also insufficient evidence to withstand Defendants' motion) by her race or gender. The mere fact that Plaintiff may belong to one or more protected classes and alleges (without evidentiary support) to have suffered a constitutional injury does not, without more, create the requisite causal link between that alleged injury and her race or gender. Thus, the Court will enter summary judgment in Defendants' favor. *See Burgos v. Canino*, 641 F. Supp. 2d 443, 458 (E.D. Pa. 2009) (granting summary judgment and noting "[plaintiff] cannot presume to know what defendants were thinking and he has no evidence to support his allegation that defendants were motivated by race or class to deprive of the equal protection of the law."); *see also Pitak v. Bell Atlantic Network Servs., Inc.*, 928 F. Supp. 1354, 1369 (D. N.J. 1996) (granting summary judgment on a § 1985 claim where plaintiffs "provided nothing more than conclusory allegations"). Thus, judgment will be entered in Defendants favor on Counts 12 and 17.

The Court will also grant summary judgment in favor of Defendants on Counts 18 and 19 which allege violations of 42 U.S.C. § 1983 by Valley Township for failing to supervise and train Judge Koon and Friel. Under *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978) a municipality may be held liable for a constitutional violation resulting from "acts implementing an official policy, practice or custom of the municipality." To establish a *Monell*, a plaintiff must show: "(1) she possessed a constitutional right of which she was deprived; (2) the municipality had a policy; (3) the policy 'amounted to deliberate indifference' to the plaintiff's constitutional right; and (4) the policy was the 'moving force behind the constitutional violation.'" *Vargas v. City of Phila.*, 783 F.3d 962, 974 (3d Cir. 2015) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989)).

Plaintiff's *Monell* claims fail because she has not produced evidence from which a reasonable jury could find that her constitutional rights were violated, much less that the moving

force behind any such violation was a policy, practice, or custom of Valley Township (i.e., its failure to train its police or magisterial district judges). The evidence before the Court establishes the existence of a dispute between Plaintiff and James that ultimately involved Friel. Presented with competing claims of harassment, the evidence shows Friel directed both combatants to cease contact. Yet, Plaintiff disobeyed. As a result, she was cited. At a hearing before Judge Koon, Plaintiff then agreed not to have any further contact with James, and the harassment citations Friel issued were withdrawn. Plaintiff was never arrested, found guilty, or otherwise restricted in any way for her failure to follow police orders—in fact, Plaintiff does not appear to have even been made aware of the second citation for some time after it was issued and withdrawn. On this record, the Court discerns no basis from which a rational jury could find she suffered a violation of her constitutional rights.[22] As a result, the Defendants are entitled to summary judgment in their favor on Counts 18 and 19.

Having determined that Defendants are entitled to summary judgment on each of Plaintiff's claims arising under federal law,[23] the Court turns to Plaintiff's remaining state law

---

[22] Even assuming Plaintiff could show a deprivation of her constitutional rights, the Court would also grant summary judgment in Defendants' favor because Plaintiff has not produced any evidence showing that the purported failure to train Friel or Judge Koon "reflects a 'deliberate' or 'conscious' choice'" by Valley Township, as is required to sustain her claim. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

[23] Counts 14 and 15 allege violations of the "Civil Rights Act" and Civil Rights Act of 1964, without identifying any facts or law which support her right to relief, and Plaintiff does address either claim in her Opposition to Defendants' Motion for Summary Judgment or her Sur-Reply. As a result, the Court finds Plaintiff has abandoned these claims, and will grant summary judgment in Defendants' favor. *See Manning v. WPX Energy Appalachia, LLC*, No. 12-646, 2015 WL 3972609, at *5 (E.D. Pa. June 30, 2015) ("A plaintiff abandons a claim when they fail to respond to defendants' arguments for summary judgment as to that claim.").

Moreover, this Court, having dismissed the Amended Complaint as it pertains to Judge Koon, need not address those counts which concern his alleged role in the events at issue (Counts 3, 6, 9, 11, 18, and 21).

claims.[24] Because Plaintiff has failed to support any of these claims with evidence sufficient to

create a genuine issue of material fact and Defendants are entitled to judgment as a matter of

---

[24] On March 29, 2017, after the close of discovery and briefing on Defendants' summary judgment motion, Plaintiff moved for leave to file an amended complaint to clarify that Counts 5 and 6, both of which allege due process violations, assert substantive and procedural due process claims, and add a First Amendment retaliation claim, a theory which Plaintiff contends "more closely reflects the supporting evidence and allegations throughout her pleadings." Mot. 1, Mar. 29, 2017, ECF No. 109. The Court denied the motion on September 28, 2018, without explanation, *see* Order, Sept. 28, 2018, ECF No. 132, and writes now to briefly explain the basis for its decision.

Generally, a Court is obligated to provide leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Amendment may be denied, however, where it would be "inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). Aside from the fact that Plaintiff's motion sought to add at least one new claim after the close of discovery and the ripening of Defendants' summary judgment motion (which suggests amendment would be inequitable), amendment here would have been futile. While the futility analysis under Rule 15 generally turns on whether the proposed amendment would be sufficient to withstand a motion to dismiss, *see City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018) ("Leave to amend is properly denied if the amendment would be futile, i.e., if the proposed complaint could not withstand a renewed motion to dismiss." (internal quotation marks omitted)), a different analysis applies where, as here, a plaintiff seeks leave after the Defendant has moved for summary judgment. In such a case, the motion to amend "will not be granted unless the party seeking amendment can show not only that the proposed amendment has 'substantial merit,' but also come forward with 'substantial and convincing evidence' supporting the newly asserted claim." *Preston v. Vanguard Group, Inc.*, 14-7243, 2015 WL 7717296, at *6 (E.D. Pa. Nov. 30, 2015) (quoting *Carey v. Beans*, 500 F. Supp. 580, 582 (E.D. Pa. 1980))

Plaintiff's proposed amendment to Count 5, clarifying that the claim was for both substantive and procedural due process rights, would have been futile because such an amendment would not have cured the fatal defect discussed in greater detail above—namely, the absence of any evidence suggesting that the evidence of her contacts with James and Richelle Solomon supporting Friel's citations was fabricated in the first instance. *See Halsey*, 750 F.3d at 295 (noting evidence "that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong"). As to Count 6, Plaintiff's bid to amend was futile because the claim to be amended was asserted only against Judge Koon, who the Court dismissed from this action with prejudice on January 19, 2019. *See* Order, Jan. 19, 2017, ECF No. 69.

Plaintiff's request to add a First Amendment retaliation claim alleging that Friel cited her in retaliation for, inter alia, her complaints to Richelle Solomon's employer was also denied as futile. Where, as here, such a claim involves a retaliatory prosecution, a plaintiff must establish the absence of probable cause. *See Hartman v. Moore*, 547 U.S. 250, 265-66 (2006) (holding the absence of probable cause "must be pleaded or proven" in a First Amendment retaliation case alleging a retaliatory prosecution). As discussed in greater detail in footnote 11, Plaintiff has failed to establish that Friel lacked probable cause to cite her for harassment. The evidence in the

law,[25] summary judgment will be entered in Defendants' favor on each of the remaining state claims.[26]

Count 3 of the Amended Complaint purports to advance a "common law" claim for abuse of process against Friel. Plaintiff's theory of relief is somewhat difficult to follow, but it appears she claims Friel abused the criminal process by citing Plaintiff for harassment in order to protect James and retaliate against Plaintiff for seeking a PFA order against him.

Under Pennsylvania law, a defendant commits the tort of abuse of process by using the legal process "for some unlawful purpose, not one for which it was intended. In other words, it is a perversion of the legal process." *Shaffer v. Stewart*, 473 A.2d 1017, 1019 (Pa. Super. Ct. 1984). Unlike other state claims involving the misuse of legal proceedings, "it is immaterial" to the abuse of process analysis whether the underlying process "was properly issued, that it was

---

record makes clear that the facts and circumstances known to Friel were sufficient to "warrant a reasonable person to believe that an offense [had] been . . . committed by" Plaintiff. *Orsatti*, 71 F.3d at 483. Thus, her claim would have been deficient upon arrival, and justice did not require granting Plaintiff leave to amend. *See Turkos v. Dupont Borough*, 721 F. App'x 208, 213-14 (3d Cir. 2018) (affirming summary judgment in favor of defendants where plaintiff failed to produce "sufficient conflicting evidence to call into question the reasonableness of the charging decision based on the information within [the officers'] knowledge at the time decision was made").

[25] The Court exercises supplemental jurisdiction even though it will grant summary judgment on the federal claims because Plaintiff's state claims "are so related to claims in the action . . . that they form part of the same case or controversy under Article III of the United States Constitution," 28 U.S.C. § 1367(a), and the parties having litigated this matter intensely for some time, the Court finds "considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification" for exercising jurisdiction over these claims. *Sarpolis v. Tereshko*, 625 F. App'x 594, 599 (3d Cir. 2016) (quoting *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000)).

[26] Plaintiff's Opposition to Defendants' Motion does not address their Motion as it pertains to Count 4, which alleges "Malicious Abuse of Civil Process" in violation of Pennsylvania's Dragonetti Act. As a result, the Court finds that Plaintiff has abandoned this claim, and will grant Defendants' Motion as it pertains to Count 4. *See Manning*, 2015 WL 3972609 at *5 ("A plaintiff abandons a claim when they fail to respond to defendants' arguments for summary judgment as to that claim.").

obtained in the course of proceedings that were brought with probable cause and for a proper purpose, or even that the proceedings terminated in favor of the person instituting or initiating them." *Lerner v. Lerner*, 954 A.2d 1229, 1238 (Pa. Super. Ct. 2008) (quoting *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (1993)). Rather, a plaintiff need only show that the defendant "(1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed[,] and (3) harm has been caused to the plaintiff." *Id.* (quoting *Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. Ct. 1998)).

Even assuming the filing of the harassment citations satisfies the first element of the tort and that Plaintiff suffered harm as a result of the citations by virtue of having had to appear at a hearing related to the first citation (thus satisfying the claim's third element), Plaintiff has failed to produce any evidence from which a rational jury could find that Friel filed the citations for a primary purpose other than holding Plaintiff accountable for harassing James. The record shows Friel ordered Plaintiff and James to cease contact with each other after each complained to him about harassment and/or threats by the other. Yet, Plaintiff persisted. As a result, Friel issued a citation. Plaintiff has proffered no admissible evidence from which a jury could find that Friel's action was primarily motivated by something other than Plaintiff's alleged misconduct and so summary judgment will issue in Defendants' favor on this claim.

Plaintiff argues that summary judgment is inappropriate because Friel initiated criminal process to protect his longtime friend, James. However, there is no evidence suggesting Friel cited Plaintiff in the service of that relationship. In fact, the only evidence Friel may have had any kind of prior relationship with James is an email from Plaintiff's friend "John" (who is not otherwise identified) to Plaintiff from April 29, 2014. In that message, "John" states: "Spoke with Friel who said he is aware of Dr. Brown's concerns and is taking them very seriously. *He*

*said he has known James Brown for 27 years and is aware of one proven incident in which he was involved.*" Opp'n Ex. 1-J (emphasis supplied). Even accepting this double-hearsay, the Court is not persuaded that the mere existence of such a relationship is sufficient to withstand Defendants' motion. At most, the email hints at the possibility that Friel filed the harassment citations with "bad intentions"; however, this is insufficient to support a claim for abuse of process under Pennsylvania law. *See Clausi v. Stuck*, 74 A.3d 242, 250 (Pa. Super. Ct. 2013). (noting Pennsylvania cases "unequivocally state" that evidence process was initiated "with bad intentions" is "not enough" to withstand summary judgment).

Plaintiff also cites a number of documents which she believes support her claim. At their core, these documents, which consist primarily of the harassment citations, docket sheets, and print-outs of statutes, establish that Plaintiff was the subject of summary criminal proceedings. However, even when construed in a light most favorable to Plaintiff, these documents do not suggest that Friel acted for a purpose other than to hold Plaintiff accountable for what Friel considered to be harassing behavior. Put simply, it is not enough for Plaintiff to have shown that Friel instituted process against her or that she was harmed somehow by having to defend herself. She must bridge the gulf between these issues by producing evidence from which a jury could find that Friel issued the citations "primarily to accomplish a purpose for which the process was not designed." *Lerner*, 954 A.3d at 1238. She has not, and, therefore, Defendants are entitled to summary judgment on Count 3.

Count 13 advances a claim for civil conspiracy under Pennsylvania law, although against whom is not clear from her pleadings. Plaintiff's theory is somewhat obscured by the fact that she addresses Count 13 in tandem with Counts 12 and 17, her federal civil rights conspiracy claims, in her Opposition, and alleges no facts to support the claim in her Amended Complaint.

To the extent the Court can determine the parameters of Plaintiff's claim, it appears that she claims Friel and Judge Koon conspired to "(1) generate revenue for the Court by filing false criminal charges and levying fines against unwary individuals and (2) target and punish women who file Protection from Abuse petition[s]—by wrongly accusing and prosecuting them for violating an unlawful 'Policy' which distorts PA Act 23 Protection from Abuse Laws." Opp'n 26-27.

In order to state a cause of action for civil conspiracy, the following elements are required: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Gen. Refractories v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003) (citing *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987-88 (Pa. Super. Ct. 1997)). A plaintiff must also produce evidence of "malice," that is, "an intent to injure" the plaintiff. *Skipworth by Williams v. Lead Indus. Ass'n, Inc.*, 690 A.2d 169, 265 (Pa. 1997) (quoting *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (1979)). "Malice will only be found when the *sole* purpose of the conspiracy is to cause harm to the party who has been injured." *Sarpolis v. Tereshko*, 26 F. Supp. 3d 407, 423 (E.D. Pa. 2014); *see also Thompson*, 412 A.2d at 472 (affirming summary judgment on civil conspiracy claim where "there are no facts of record which indicate that [the defendant] acted solely to injure [plaintiffs]").

Plaintiff alleges that Defendants engaged in a conspiracy to (1) generate revenue by collecting fines from falsely accused criminal defendants and (2) punish women who seek protection from abuse orders. In her Opposition, Plaintiff identifies 22 documents that she claims support her claim for civil conspiracy. None of these documents—construed in a light most

favorable to Plaintiff and considered in isolation and in concert—supports an inference that Friel or Judge Koon intended to harm Plaintiff, specifically, or to generate revenue by falsely accusing individuals or punish female PFA petitioners, generally. At best, these documents substantiate that Plaintiff was the subject of criminal process without shedding any light on whether Defendants acted with malice (or, for that matter, in concert with one another). As a result, these documents do not establish a genuine issue of material fact and summary judgment will issue in Defendants' favor on Count 13.

Counts 20 and 22 through 24 allege various theories of negligence under Pennsylvania common law.[27] The Pennsylvania Political Subdivision Tort Claims Act (PSTCA) grants governmental immunity to local agencies and their employees for damages on account of any injury to person or property. 42 Pa. Con. Stat. § 8542(a). The statute waives immunity where the conduct at issue touches on any one of eight subjects: vehicle liability; care, custody or control of personal property; real property; trees, traffic controls and street lighting; utility service facilities; streets; sidewalks; and care, custody or control of animals. *Id.* § 8542(a-b). "Because of the clear intent of [PTSCA] to insulate government from exposure to tort liability, the exceptions to immunity are to be strictly construed." *Lockwood v. City of Pittsburgh*, 751 A.2d 1136, 1139 (Pa. 2000) (alteration in original). None of the alleged negligence of which Plaintiff complains touches on any of the enumerated exceptions to the PTSCA. As a result, Plaintiff's negligence

---

[27] In Count 20, Plaintiff claims that unspecified Defendants breached their duty of care to her by, allegedly, siding with James in their intra-family dispute. In Counts 22 and 23, Plaintiff claims the Valley Township Manager and Board of Supervisors failed "to reasonably control or monitor actions" of Friel and Judge Koon. In Count 24, Plaintiff alleges a claim for negligent infliction of emotional distress against unspecified Defendants.
   To the extent Counts 22 and 23 could also be reasonably construed as *Monell* claims, Defendants are entitled to summary judgment in their favor for the same reasons justifying relief with respect to Counts 18 and 19.

claims fail as a matter of law and the Court will grant summary judgment in Defendants' favor on Count 20, and 22 through 24.

Count 25 asserts a cause of action for intentional infliction of emotional distress. Although Plaintiff does not specify against whom the claim is brought, the thrust of her claim is directed toward Friel, who allegedly, "promised to help [her], but instead, launched a crusade against her" and "instigated his friend James (Ms. Brown's abuser) to escalate his threats and violence." [28] Opp'n 37. Defendants move for summary judgment on the grounds that Friel's conduct was not sufficiently outrageous to warrant liability. The Court agrees and will therefore grant summary judgment in Defendants' favor on Count 25.

In order to state a claim for intentional infliction of emotional distress under Pennsylvania law, a plaintiff must allege "(1) the defendant's conduct was extreme and outrageous; (2) the conduct was intentional or reckless; (3) the conduct caused emotional distress; and (4) the distress is severe." *Chuy v. Phila. Eagles Football Club*, 565 F.2d 1265, 1273 (3d Cir. 1979). "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998). "It is for the Court to determine in the first instance whether the conduct is extreme and outrageous, such that recovery may be permitted." *Cheney v. Daily News L.P.*, 654 F. App'x 578, 583 (3d Cir. 2016) (citing *Small v. Juniata Coll.*, 682 A.2d 350, 355 (Pa. Super. Ct. 1996)).

---

[28] The Court does not consider the allegations against Judge Koon for the reasons stated above. And, because Plaintiff has failed to establish a genuine issue of material fact as to Friel, it need not consider whether the Valley Township Manager and Board of Supervisors are liable for his intentional conduct based on respondeat superior—even assuming respondeat superior applies to such conduct. *See Spitsin v. WGM Transp., Inc.* 97 F.774, 776 (Pa. Super. Ct. 2014) ("A master is liable for the acts of his servant [that] are committed during the course of and within the scope of the servant's employment. This liability of the employer *may* extend even to intentional or criminal acts." (alterations in original, emphasis added, internal citations omitted)).

Courts have found "only the most egregious conduct" to be actionable. *Hoy*, 720 A.2d at 151. Examples of actionable conduct include: a defendant who buried a child's dead body in a field without seeking medical attention prior to the child's death or notifying authorities or the child's parents for months, *see Papieves v. Lawrence*, 263 A.2d 118, 121 (1970), the intentional fabrication of records to suggest that the plaintiff murdered a third party resulting in his indictment for homicide, *see Banyas v. Lower Bucks Hospital*, 437 A.2d 1236, 1238-39 (1981), and a the release of information that the plaintiff was suffering from a fatal disease by a physician, despite the physician's knowledge such information was false, *see Chuy*, 565 F.2d at 1265. In more recent cases, courts have found sufficiently outrageous conduct where defendants were alleged to have left "a man charged with murder, attempted murder, aggravated assault, robbery, and resisting arrest, unrestrained in a public hospital," *Martin-McFarlane v. City of Phila.*, 299 F. Supp. 3d 658, 671 (E.D. Pa. 2017), and where police, during a stand-off, were alleged to have disconnected a plaintiff's electricity, threatened to arrest him on felony charges if he failed to cooperate, fired hundreds of canisters of pepper spray into his home, and played loud music and other screeching noises, all of which culminated in the plaintiff's suicide, *see Heckensweiler v. McLaughlin*, 517 F. Supp. 2d 707, 720 (E.D. Pa. 2007). In contrast, at least one Pennsylvania appellate court has noted that "[p]olice officers doing their job by arresting people when they have probable cause to do so certainly falls far short of extreme or outrageous conduct." *Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010) (affirming trial court's order granting summary judgment in favor of defendant police officers where officers had probable cause to effectuate arrest of plaintiffs).

Having reviewed the record, the Court finds there is insufficient evidence from which a rational factfinder could conclude that Friel's conduct—or the conduct of any other party—was

extreme and outrageous under the applicable standard. The evidence before the Court shows—and Plaintiff has not adduced evidence from which a jury could conclude otherwise—that Friel tried to defuse a vitriolic family dispute, and that when those efforts failed, he sought to have the offending party punished by citing her for harassment. Under these circumstances, the Court concludes that Friel's conduct was not "beyond all possible bounds of decency." *Hoy*, 720 A.2d at 754. More specifically, it appears to the Court that Friel was, similar to the defendant-officers in *Manley*, doing his job by issuing citations to Plaintiff after receiving evidence she persisted in unwanted contact. As a result, the Court finds that the Friel's conduct was not sufficiently outrageous to support a claim for intentional infliction of emotional distress and the Court will grant summary judgment on Count 25 in Defendants' favor.

Finally, the Court turns to several additional motions Plaintiff filed after briefing on Defendants' motion for summary judgment completed.[29] The Court will dismiss Documents 133, 135, and 136—each of which of raises issues identical to those addressed above—as moot, having determined that the Defendants are entitled to summary judgment. The Court will also deny Document 140, which seeks sanctions under 28 U.S.C. § 1927, Federal Rules of Civil Procedure 16, 26, and 37, and the Court's inherent authority, because sanctions are not warranted.

**CONCLUSION**

---

[29] While Defendants' Motion for Summary Judgment was under advisement, Plaintiff filed a Motion for Judgment on the Pleadings (Document 133), Corrected Motion for Judgment on the Pleadings (Document 135), a "Motion for Court Order Mandating Defendant Police to Properly, and Permanently Disarm Plaintiffs Valley Twp Known Stalker (Pursuant to PA Title 23 C.S. §§ 6101-22 and Judges Prat and Bortners Original Orders" (Document 136); and a "Motion for Sanctions Pursuant to 28 USC 1927 also FRCP 16, 26 and 37 and the Court's Inherent Authority and to Strike Defendant's Oppositions and Defenses" (Document 140).

For the reasons stated above, the Court will grant Defendants' Motion for Summary Judgment in its entirety.

Having determined that Defendants are entitled to summary judgment on each of Plaintiff's claims, the Court will dismiss as moot Plaintiff's Motion for Judgment on the Pleadings (Document 133), Corrected Motion for Judgment on the Pleadings (Document 135), "Motion for Court Order Mandating Defendant Police to Properly and Permanently Disarm Plaintiff's Valley TWP Known Stalker" (Document 136). The Court will also deny "Motion for Sanctions Pursuant to 28 U.S.C. § 1927 also FRCP 16, 26 and 37 and the Court's Inherent Authority and to Strike Defendant's Oppositions and Defenses" (Document 140).

An appropriate order follows.


BY THE COURT:


/s/ Juan R. Sánchez
Juan R. Sánchez, C.J.